UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

CLARENCE COBB,

                          Plaintiff,

           - against-

XSPORT FITNESS, INC., JOHN HOFFMAN,
MARK KALINSKY, BEN "DOE", BROOK
CHURCH and CAPITAL FITNESS, INC.,

                          Defendants.

---------------------------------------------------------X

**OPINION AND ORDER
09 CV 3553 (SJF)(WDW)**

FEUERSTEIN, J.

On August 13, 2009, *pro se* plaintiff Clarence Cobb ("plaintiff") filed this action against

defendants Capital Fitness, Inc., XSPORT Fitness, Inc.[1], John Hoffman, Mark Kalinsky, Ben

"Doe" and Brook Church (collectively, "defendants"), alleging sexual harassment and employment

discrimination based upon race and sex, and retaliation, in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et. seq*, and New York State Executive Law § 296

("NYSHRL"). Defendants now move pursuant to Rules 12(b)(1), (2), (4), (5) and (6) of the

Federal Rules of Civil Procedure to dismiss the complaint for lack of subject matter jurisdiction,

lack of personal jurisdiction, insufficient process, insufficient service of process and failure to state

a claim, respectively. Plaintiff moves pursuant to Rule 15(a) of the Federal Rules of Civil

Procedure to amend the complaint, but otherwise did not timely oppose defendants' motion.[2] For

---

[1] XSPORT Fitness, Inc. is not a legal entity. Rather, Capital Fitness, Inc. does business as
XSPORT Fitness.

[2] Plaintiff was served with defendants' motion to dismiss on November 16, 2009 at his address of
record. On December 28, 2009, plaintiff moved to amend his complaint, wherein he asserts, *inter
alia*, that "[o]n 11/16/2009, and 11/25/2009, counsel of [sic] Capital fitness inc [sic] respectively,
tiled [sic] their answers to the pro-se now seeks to file a First Amended Complaint, * * *." (Plf.

the reasons stated herein, defendants' motion is granted in part and denied in part and plaintiff's motion is denied.

I.     Background

A.     Factual Allegations[3]

Plaintiff is an African-American male. (Complaint [Compl.], ¶ 17).

On or about August 2006, plaintiff commenced employment with defendant Capital Fitness, Inc. d/b/a XSPORT Fitness ("XSPORT") as a sales consultant. (Compl., ¶ 18). Plaintiff alleges that he was frequently ranked in the top three (3) for employee sales and was recognized by XSPORT for his work performance. (Compl., ¶ 19).

At all relevant times, defendant John Hoffman ("Hoffman") was XSPORT's operations manager and plaintiff's supervisor; defendant Ben "Doe" ("Ben") was XSPORT's opening manager and plaintiff's supervisor; and defendants Mark Kalinsky ("Kalinsky") and Brook Church ("Church") were managers for XSPORT who supervised plaintiff. (Compl., ¶¶ 10, 12, 14, 16).

Plaintiff provides the following examples of the alleged sexually harassing conduct by defendants: (1) Ben's use of "overt sexual language" in front of or to him, (Compl., ¶¶ 21-22); (2)

_____

Mot., p. 1). Thus, it appears that plaintiff received defendants' motion, notwithstanding his further contention that defendants have "filed no dispositive motions" to date and that the case has "laid dormant" since its inception. (Id. at p. 2). Although other mail defendants sent to plaintiff at the address were subsequently returned to them, the motion to dismiss was not. (See Letter of Lisa M. Brauner dated January 6, 2010). On March 12, 2010, after the time expired for plaintiff to oppose defendants' motion to dismiss and defendants were granted leave to file their motion as unopposed, plaintiff filed a "Motion for Leave to File Plaintiff's First Amended Complaint and Answer to opposition," ("Plf. Reply").

[3] The factual allegations are taken from the complaint and are assumed to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

sexual advances and inappropriate touching by Ben and Steven, another sales consultant at XSPORT (Compl., ¶¶ 26-27); (3) Steven's regular display of pornographic movies and pictures on his cell phone to him, Hoffman and other employees, (Compl., ¶ 29); (4) Hoffman's regular use of sexual comments to him about female employees and Steven's advances toward him, inappropriate touching of female employees in his presence and encouragement of him to act in a similar manner, (Compl., ¶¶ 30- 35, 41); (7) sexual comments and innuendos by Jillian, another sales consultant, (Compl., ¶ 37); and (8) sexual comments by Church, (Compl., ¶¶ 21, 40).

Plaintiff's examples of disparate treatment based on his race and a hostile work environment include: (1) comments by Ben to other employees, and one comment by Kalinsky during a sales meeting attended by all employees, disparaging the sales performance of other employees by implying that their performance was inferior to that of a black man, (Compl., ¶¶ 36, 39); (2) comments by Kalinsky that he was hired to sell gym memberships to black and poor people, (Compl., ¶ 25); (3) a comment by Church, made while he displayed his swastika tattoo, indicating that plaintiff would not be around for long, (Compl., ¶ 23); (4) continuous scrutiny of his performance by Church, (Compl., ¶ 23); (5) constant racial comments by Church, (Compl., ¶24); (6) a false accusation of theft against him by Church because he possessed the keys to the spa area, (Compl., ¶ 42); (7) Kalinsky's unjustified "disciplinary write up" of him for insubordination when he complained to him about Church's conduct, (Compl., ¶ 43); and (8) a racial comment by Ben, (Compl., ¶¶ 22).

Plaintiff alleges that he complained to his supervisor Daryl Nagle ("Nagle") about all of the sexually harassing and discriminatory acts and comments, but Nagle responded that there was nothing he could do about it and at one point indicated that plaintiff's co-workers "hated [his] black ass." (Compl., ¶ 38). Plaintiff also alleges that in or about November 2006 he complained to

3

Kelly Cartwright ("Cartwright"), the head of XSPORT's human resources department, about the conduct and she told him that she was not authorized to help him with any complaint about a management level employee and referred him to Gary Polic ("Polic"), a member of XSPORT's human resources department in Chicago, Illinois. (Compl., ¶ 52).

Plaintiff alleges that in contrast to his complaints about Steven's sexual harassment, the complaints of white employees were not summarily dismissed. (Compl., ¶ 29). Plaintiff also alleges that the other sales consultants were free to sell memberships to any potential customer; were not scrutinized or threatened like he was; were not subjected to racially charged or derogatory comments; were not falsely accused of theft; and were not subjected to unjustified "disciplinary write ups." (Compl., ¶¶ 23-25, 31, 36, 42-43).

Plaintiff further alleges that defendants retaliated against him once he complained to his supervisors about sexual harassment and disparate treatment based on his race by: writing him up for insubordination, instructing his co-workers to stay away from him, unjustifiably scrutinizing his sales contracts, making further racist and sexist remarks, ignoring his complaints and eventually terminating him. (Compl., ¶¶ 46). In addition, plaintiff alleges, *inter alia*, that Steven attempted to undermine his sales, (Compl., ¶ 50), and that Hoffman offered to pay him in exchange for his resignation, (Compl., ¶ 54).

Plaintiff's employment with XSPORT was terminated on December 10, 2006. (Compl., 56).

B.    Procedural History

On September 22, 2008, plaintiff, by counsel, filed a charge of discrimination based on sex and race, and retaliation, against "XSPORT Fitness, Inc." with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter on May

13, 2009.

On August 13, 2009, plaintiff filed this action against defendants alleging employment discrimination based upon race and sex[4], and retaliation, in violation of Title VII[5] and the NYSHRL. By order dated October 5, 2009, plaintiff's motion for leave to proceed *in forma pauperis* was granted as a result of which, *inter alia*, the Court ordered the United States Marshal Service ("USMS") to effect service on defendants pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure.

On October 9, 2009, summonses were issued as to all defendants and a "USM-285" (acknowledgment of receipt) form, copies of the summons and complaint, and a certified copy of the October 5, 2009 order were forwarded to the USMS for service on defendants. On or about October 16, 2009, separate mailings containing the USM-285 form and copies of the summons and complaint, addressed to each defendant, were received at the XSPORT club, located at 630 Old Country Road, Garden City, New York 11530, from the USMS. (Declaration of Dennis Pierro [Pierro Decl.], ¶ 5).[6]

---

[4] Although plaintiff refers to sexual harassment and discrimination based on sex throughout his complaint, his six (6) claims for relief are based exclusively on race discrimination (first claim for relief) and retaliation (second claim for relief). (Compl., ¶¶ 60-67). The third through sixth claims for relief assert only "aider and abettor" liability against Hoffman, Kalinsky, Ben and Church, respectively, under the NYSHRL based upon the claims for race discrimination and retaliation. (Compl., ¶¶ 68-83). Nonetheless, since plaintiff is proceeding *pro se* I will deem his complaint to also assert claims based on sexual harassment and discrimination.

[5] Although plaintiff refers to "Title VII" in the preliminary statement and factual allegations in his complaint, (Compl., ¶¶ 1, 7, 9, 10, 11, 13-16), his six (6) claims for relief raise violations of the NYSHRL only. (Compl., ¶¶ 60-83). Nonetheless, since plaintiff is proceeding *pro se* I will deem his complaint to also assert claims under Title VII.

[6] Defendants maintain that the corporate headquarters of XSPORT, which is an Illinois corporation, are located at 47W210 Route 30, Big Rock, Illinois, 60511, and that only Dennis Johnson ("Johnson"), XSPORT's secretary, and Dennis Pierro ("Pierro"), XSPORT's vice

5

On December 14, 2009, counsel filed a notice of appearance on behalf of defendants in this action and also filed the instant motion pursuant to Rules 12(b)(1), (2), (4), (5) and (6) of the Federal Rules of Civil Procedure seeking dismissal of the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient process, insufficient service of process and failure to state a claim, respectively.

On December 28, 2009, plaintiff filed a motion pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to amend the complaint to add "additional claims and additional parties" and class allegations, as well as to "remove previously named Defendants." (Motion for Leave to File Plaintiff's First Amended Complaint [Plf. Mot.], pp. 1, 3). Although plaintiff has not submitted a proposed amended complaint, it appears that he seeks to assert additional claims under Title VII, the Americans with Disabilities Act ("ADA") and the Equal Pay Act ("EPA"). (Id.)

II.    DISCUSSION

A.    12(b)(1)

1.    Standard of Review

Where subject matter jurisdiction is lacking, "dismissal is mandatory." Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 295 (2d Cir. 2000) (quoting United Food & Commercial Workers Union, Local 919 AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298,

president, are XSPORT's authorized agents for service of process, and they are located at the corporate headquarters. (Pierro Decl., ¶¶ 7-8). On December 30, 2009, the summonses were returned as executed by the USMS as to all defendants except Ben and Church. The USM-285 form filed by the USMS indicates, inter alia, that although all defendants, except Ben and Church, were initially served by mail, once they failed to complete and return the USM-285 form, the USMS attempted personal service on them by delivering the summons and complaint to "Dean Rozos" on December 30, 2009.

301 (2d Cir. 1994); <u>Manway Const. Co., Inc. v. Housing Authority of City of Hartford</u>, 711 F.2d 501, 503 (2d Cir. 1983). "In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1055 (2d Cir.1993) (quoting <u>Goldman v. Gallant Securities, Inc.</u>, 878 F.2d 71, 73 [2d Cir.1989]). In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Natural Resources Defense Council v. Johnson</u>, 461 F.3d 164, 171 (2d Cir. 2006). However, when deciding a jurisdictional motion, district courts may look beyond the allegations of the complaint and "examine evidence outside of the pleadings." <u>Hamm v. U.S.</u>, 483 F.3d 135, 137 (2d Cir. 2007). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. <u>Id.</u>

Submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006). Nonetheless, "[s]ubject-matter jurisdiction, * * * refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." <u>Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region</u>, 130 S.Ct. 584, 596 (2009) (internal quotations and citations omitted).

2.    Failure to Exhaust Administrative Remedies

Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing a Title VII action in federal court. <u>See</u> <u>Deravin v. Kerik</u>, 335 F.3d 195,

200 (2d Cir. 2003); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). "Administrative exhaustion is an essential element of Title VII's statutory scheme, the purpose of which is to avoid unnecessary judicial action by the federal courts by giving the administrative agency the opportunity to investigate, mediate, and take remedial action." Canty v. Wackenhut Corrections Corp., 255 F.Supp.2d 113, 116 (E.D.N.Y. 2003)(internal quotations and citation omitted); see also Bey v. Welsbach Elec. Corp., No. 01 Civ. 2667, 2001 WL 863419, at * 2 (S.D.N.Y. Jul. 30, 2001), aff'd, 38 Fed. Appx. 690 (2d Cir. 2002) (accord). Nonetheless, contrary to defendants' contention, exhaustion is an affirmative defense, not a jurisdictional bar to suit. See Boos v. Runyon, 201 F.3d 178, 182 (2d Cir. 2000); Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000); Downey v. Runyon, 160 F.3d 139, 146 (2d Cir. 1998). Accordingly, the branch of defendants' motion seeking dismissal of the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is denied.

B.      12(b)(6)

1.      Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

8

do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

Since the EEOC right-to-sue letter is attached to the complaint, it is properly considered on this motion. See Gregory v. Daly, 243 F.3d 687 (2d Cir. 2001). Moreover, since the EEOC charge is a public document filed in an administrative proceeding, and is integral to plaintiff's Title VII claims, the charge is also properly considered on this motion. See Morris v. David Lerner Associates, ___ F.Supp.2d ___, 2010 WL 274361, at * 3 (E.D.N.Y. Jan. 26, 2010); Muhammad v.

New York City Transit Authority, 450 F.Supp.2d 198, 204-205 (E.D.N.Y. 2006); see also James v. Federal Reserve Bank of New York, No. 01-cv-1106, 2005 WL 1889859, at * 1 n. 2 (E.D.N.Y. Aug. 8, 2005) (noting that a court may take judicial notice of an EEOC charge).

    2.    Title VII Claims

        a.    Failure to Exhaust Administrative Remedies

As an affirmative defense, defendants bear the burden of establishing the plaintiff's failure to timely exhaust his administrative remedies. See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); German v. Pena, 88 F.Supp.2d 216, 219-220 (S.D.N.Y. 2000). Once defendants meet their burden, the plaintiff must plead and prove "facts supporting equitable avoidance of the defense." Bowden, 106 F.3d at 437.

        i.    Individual Defendants

It is undisputed that none of the individual defendants were designated as a respondent in plaintiff's EEOC charge. As already noted, Title VII generally requires a complainant to file a charge against a party with the EEOC or an authorized state agency before bringing suit in federal court. 42 U.S.C. § 2000e-5; see Vital v. Interfaith Medical Center, 168 F.3d 615, 619 (2d Cir. 1999). Since EEOC charges "generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements, [the Second Circuit] ha[s] taken a flexible stance in interpreting Title VII's procedural provisions, * * *, so as not to frustrate Title VII's remedial goals." Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991) (internal quotations and citation

10

omitted). Accordingly, the Second Circuit recognizes an exception to the general rule which allows a Title VII suit to proceed against a party who was not named in the EEOC charge where there is a clear "identity of interest" between the unnamed party and a party named in the administrative charge. Vital, 168 F.3d at 619 (citing Johnson, 931 F.2d at 209). In determining whether there is a clear identity of interests, a court must look to the following four (4) factors: (1) whether the complainant could have, through the use of reasonable effort, ascertained the role of the unnamed party at the time he or she filed the EEOC charge; (2) "whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;" (3) whether there was actual prejudice to the unnamed party as a result of his or her absence from the EEOC charge; and (4) whether the unnamed party ever represented to the complainant "that its relationship with the complainant is to be through the named party." Johnson, 931 F.3d at 209-210 (quoting Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977)).

Plaintiff was clearly aware of the role his various supervisors played in the alleged discriminatory and retaliatory conduct at the time he filed the EEOC charge; the interests of the supervisors and XSPORT are distinct; and the supervisors would be prejudiced by their lack of opportunity to respond to the EEOC investigation, particularly since there is no indication that they had any notice of the EEOC charge. See, e.g. Hafez v. Avis Rent A Car System, Inc., 242 F.3d 365, 2000 WL 1775508, at * 3 (2d Cir. Nov. 29, 2000) (unpublished opinion) (affirming the denial of the plaintiff's motion for leave to amend the complaint to add Title VII claims against his nine supervisors in their official capacity on the basis that any such claim was not viable since those supervisors were not named in the EEOC charge and did not have a clear identity of interest with the

11

employer who was named in the charge because the plaintiff was aware of their role in the alleged discriminatory and retaliatory incidents; the interest of those supervisors and the employer were distinct; and the supervisors would have been prejudiced by the inability to respond to the EEOC investigations and their exclusion from the litigation). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Title VII claims against the individual defendants in their official capacity is granted and plaintiff's Title VII claims are dismissed with prejudice as against the individual defendants in their official capacity based upon plaintiff's failure to exhaust his administrative remedies.

Moreover, since individuals are not subject to liability under Title VII, plaintiff's Title VII claims against the individual defendants in their individual capacity are also dismissed. See, e.g. Sassaman v. Gamache, 566 F.3d 307, 315-316 (2d Cir. 2009); Fox v. State University of New York, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007); Cherry v. Toussaint, No. 02-7322, 50 Fed. Appx. 476, 81, (2d Cir. Nov. 1, 2002). Accordingly, plaintiff's Title VII claims are dismissed in their entirety with prejudice as against the individual defendants and may only proceed, if at all, against XSPORT, plaintiff's employer.[7]

## ii. XSPORT

To the contrary, although not named in the EEOC charge, Capital Fitness, Inc. falls within the "identity of interest" exception. Instead of naming Capital Fitness, Inc. in his EEOC charge, plaintiff erroneously named "XSPORT Fitness, Inc.", which is a non-existent corporation. However, it is

---

[7] In light of this determination, it is unnecessary to consider defendants' remaining contentions with respect to the individual defendants.

undisputed that Capital Fitness, Inc. does business as "XSPORT Fitness." Application of the four (4) Johnson factors against the flexible stance to be afforded Title VII in order to effectuate its remedial goals demonstrates: (1) that as a layperson unversed "in the vagaries of Title VII", plaintiff likely did not realize that his actual employer had a different corporate name than the name under which it did business and, thus, did not know that he had to ascertain a different name for his employer to include on his EEOC charge; (2) that since "XSPORT Fitness" is just the name under which Capital Fitness, Inc. does business, the interests of Capital Fitness, Inc. are identical to the interests of the respondent named in the EEOC charge; (3) that there is no prejudice to Capital Fitness, Inc. since it was undoubtedly aware of the EEOC charge designating the name under which it does business, as opposed to its corporate name, as a respondent; and (4) that by doing business as "XSPORT Fitness," Capital Fitness, Inc. represented to plaintiff that its relationship with plaintiff was to be through its business, not corporate, name. See, e.g. Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241-1242 (2d Cir. 1995) (reversing the dismissal of the complaint against the parent company unnamed in the EEOC charge, which instead named a wholly owned subsidiary of the parent company that actually employed the plaintiff, on the basis that the parent company fell within the "identity of interest" exception since, *inter alia*, the interests of the parent and subsidiary were identical).

iii.    Timeliness of EEOC Charge

Nonetheless, defendants contend that plaintiff failed to timely exhaust his administrative remedies because his EEOC charge was not filed until approximately six hundred sixty (660) after the last act of discrimination or retaliation, i.e., plaintiff's employment was terminated on December 10, 2006 but he did not file his EEOC charge until September 22, 2008.

13

42 U.S.C. § 2000e-5(e)(1) provides, in pertinent part, as follows:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Thus, to sustain a claim for unlawful discrimination under Title VII in New York, which is a "deferral state,", i.e., it has an agency with the authority to address charges of discriminatory employment practices, a plaintiff must first file an administrative charge of discrimination with the EEOC within three hundred (300) days of the alleged discriminatory acts. See Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162, 2167, 167 L.Ed.2d 982 (2007), overturned in part by Pub. L. No. 111-2, 123 Stat. 5 (amending 42 U.S.C. § 2000e-5(e) with respect to claims of discriminatory compensation); Mudholkar v. University of Rochester, No. 06-4732-cv, 2008 WL 213888, at * 2 (2d Cir. Jan. 25, 2008); Flaherty v. Metromail Corp., 235 F.3d 133, 137 n. 1 (2d Cir. 2000).

The EEOC charging period is triggered when a "discrete discriminatory [or retaliatory] act occurred." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "A discrete retaliatory or discriminatory act occurred on the day that it happened." Id. at 110, 122 S.Ct. 2061.

The last discrete retaliatory or discriminatory act of which plaintiff complains is the termination of his employment, which occurred on December 10, 2006. Moreover, plaintiff has not alleged any act

14

contributing to his hostile work environment claim that occurred after the date of his termination. Thus, he was required to file an EEOC charge within three hundred (300) days of his termination, or no later than October 6, 2007. See Morgan, 536 U.S. at 118, 122 S.Ct. 2061 ("In order for [a hostile work environment claim] to be timely, the employee need only file a charge within * * * 300 days of any act that is part of the hostile work environment.") Accordingly, plaintiff's EEOC charge, which was not filed until September 22, 2008, was untimely.

To the extent plaintiff contends that his receipt of a "right-to-sue" letter from the EEOC establishes that he exhausted his administrative remedies[8], that contention is without merit. "[A] right-to-sue letter enables a private suit only if it is issued in connection with an administrative charge that is timely filed." McPherson, 457 F.3d at 214; see also Peralta v. Rockefeller University, No. 07-4227-cv, 328 Fed. Appx. 717, 728 (2d Cir. June 23, 2009). Therefore, the branch of defendants' motion seeking dismissal of plaintiff's Title VII claims in their entirety for failure to timely exhaust administrative remedies is granted and plaintiff's Title VII claims are dismissed in their entirety.

However, since the timeliness requirement of Title VII is an affirmative defense "analogous to a statute of limitations," McPherson, 457 F.3d at 214 (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)), it is subject to the equitable doctrines of tolling and estoppel. See Morgan, 536 U.S. at113, 122 S.Ct. 2061; Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003). Plaintiff has not argued that he is entitled to equitable avoidance of the administrative exhaustion requirement, and it does not appear from the pleadings and filings to date that such "rare and exceptional circumstances" exist in this case so as to justify application of the equitable

---

[8] In addition to the timely filing of an EEOC charge, a private Title VII plaintiff must also receive a "right-to-sue" letter from the EEOC prior to commencing an action in federal court. See McPherson v. New York City Department of Education, 457 F.3d 211, 213 (2d Cir. 2006).

doctrines of tolling or estoppel. See Zerilli-Edelglass, 333 F.3d at 80. Nonetheless, since plaintiff is *pro se*, his Title VII claims against XSPORT are dismissed with prejudice **unless within fourteen (14) days from the date of this order**, plaintiff files an affidavit establishing that the time within which he is required to file an administrative charge with the EEOC should be equitably tolled or that defendants should be equitably estopped from asserting the defense of failure to exhaust. Defendants shall have **three (3) days** after any such affidavit is served upon them within which to respond thereto.

C.    Supplemental Jurisdiction

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, see Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391-92, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 388 (2d Cir. 2000), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Carlsbad Technology, Inc. v. HIF Bio, Inc., 129 S.Ct. 1862, 1866-1867, 173 L.Ed.2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary). The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); see also Kolari v. New York-Presbuterian Hospital, 455 F.3d 118, 122 (2d Cir. 2006). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7, 108 S.Ct. 614; New York Mercantile

Exchange, Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 118-119 (2d Cir. 2007); Kolari, 455 F.3d at 122.

In light of the dismissal of all federal claims in this action at the pleadings stage, and upon consideration of all relevant factors , i.e., judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over plaintiff's remaining pendant state law claims.[9] Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's state law claims is granted and plaintiff's NYSHRL claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).[10] Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for his state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of **thirty (30) days after the date of this order**, unless a longer tolling period is otherwise provided under state law.

---

[9] In the event plaintiff establishes that the period within which he was required to file an administrative charge with the EEOC was equitably tolled or that defendants should be equitably estopped from asserting the defense of failure to timely exhaust administrative remedies, thus essentially reinstating his Title VII claim against XSPORT, his state law claims will likewise be reinstated.

[10] In light of the dismissal of all claims in the complaint, it is unnecessary to consider defendants' remaining contentions. However, in the event that plaintiff establishes that the period within which he was required to file his EEOC charge should be equitably tolled or estopped, I note that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the Court is required to extend the time for service of process "for an appropriate period" if the plaintiff "shows good cause for the failure" to effect proper service. Since plaintiff is proceeding *pro se* and was granted leave to proceed *in forma pauperis*, he was entitled to rely upon the United States Marshals Service ("USMS") to effect service, Fed. R. Civ. P. 4(c)(3), and, thus, there was good cause for his failure to effect proper service under Rule 4(m). See Romandette v. Weetabix Co., Inc., 807 F.2d 309, 311 (2d Cir. 1986); Kavazanjian v. Rice, No. 03-CV-1923, 2005 WL 1377946, at * 2 (E.D.N.Y. June 6, 2005); Husowitz v. American Postal Workers Union, 190 F.R.D. 53, 57 (E.D.N.Y. 1999). Morever, defendants had actual notice of this action and have not shown any prejudice by the USMS's failure to effect proper service, i.e., the loss or destruction of relevant evidence or the inability to locate key witnesses, and proper service can yet be obtained on them. See Romandette, 807 F.2d at 311; Perez v. Hawk, 302 F.Supp.2d 9, 17 (E.D.N.Y. 2004); Husowitz, 190 F.R.D. at 58.

D.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991)). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman, 371 U.S. at 182, 83 S.Ct. 227. However, if amendment would be futile, i.e., if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

As previously noted, plaintiff seeks leave to amend the complaint to add unidentified additional claims, parties[11] and class allegations and to remove unidentified defendants. Plaintiff has not submitted

---

[11] In plaintiff's "Motion for Leave to File Plaintiff's First Amended Complaint and Answer to opposition," which is, in reality, plaintiff's reply to defendants' opposition to his motion to amend, plaintiff names the following individuals and entities in the caption: "XSPORTFITNESS j and Tan," "Garypolic," "Chriss, Hoffman," "Mrakkilkuskie," "Kelly Carthwright," "RickSikorski," "Dan Warrassiasor," "Danny Warrasas," and "Capital Fitness inc. (XSPORT fitness)." Defendants deny knowledge of the identity of any of those individuals. (Letter of Lisa Brauner dated March 31, 2010, ¶ 3). Plaintiff otherwise fails to cure the deficiencies in his motion which were raised by defendants in their opposition to the motion, i.e., to provide a proposed amended complaint, to identify the additional claims and class allegations he seeks to assert, etc.

a proposed amended complaint, although a liberal reading of his motion indicates that he may be seeking to assert additional claims under Title VII, as well as claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Equal Pay Act ("EPA") of 1963, 29 U.S.C. § 206(d).

For the reasons set forth herein, any amendment to the complaint to add additional claims under Title VII would be futile, since plaintiff has failed to timely exhaust his administrative remedies. Similarly, any proposed ADA claim would likewise be futile since the ADA also requires the timely filing of an administrative charge with the EEOC as a precondition to bringing such claims in federal court. See Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004); Chesney v. Valley Stream Union Free School District No. 24, No. 05 Civ. 5106, 2009 WL 1405203, at * 7 (E.D.N.Y. May 14, 2009).

In addition, any amendment to assert an EPA claim would be futile because any such claim is time-barred. 29 U.S.C. § 255(a) requires an EPA claim to be commenced within two (2) years from the date such claim accrues, or within three (3) years if the EPA violation is willful. See Pollis v. New School for Social Research, 132 F.3d 115, 118 (2d Cir. 1997). Since plaintiff's employment was terminated on December 10, 2006, more than three (3) years prior to his motion for leave to amend, which was filed on December 28, 2009, any amendment would be futile unless it relates back to the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure.

An amendment made after the statute of limitations has run relates back to the date of the original pleading if, *inter alia*, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out– or attempted to be set out– in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Plaintiff's original complaint only alleged facts relating to the purported sexual harassment and racial discrimination of him by his supervisors and co-workers and did not allege any facts challenging his hours, benefits, rate of pay, etc. Accordingly, any EPA claim would inject a new

and unanticipated claim based on an entirely new set of facts. Therefore, any purported EPA claim would not relate back to the original complaint and is, thus, time-barred. Compare Marshall v. Honeywell Technology Solutions, Inc., 536 F.Supp.2d 59, 66-67 (D. D.C. 2008) (finding that the plaintiff's EPA claim did not relate back to the timely filed race and sex discrimination claims); Schutz v. Western Publishing Co., 609 F.Supp. 888 (N.D. Ill. 1985) (finding that the plaintiff's EPA claims did not relate back to her Title VII complaint because the EPA claim was a new and different cause of action and the original complaint did not give defendant notice of the EPA cause of action) with O'Donnell v. Vencor Inc., 465 F.3d 1063, 1067-1068 (9th Cir. 2006) (finding that the EPA claims related back to the second complaint where the Title VII and ADEA claims in the second complaint related to the plaintiff's hours and salary in comparison to male employees; facts upon which the EPA claims would also be based). Thus, any amendment to the complaint to assert an EPA claim would be futile.

Since the proposed federal causes of action plaintiff seeks to assert would be futile, and plaintiff does not seek to assert any other federal cause of action, his motion for leave to amend the complaint is denied.[12]


III.    Conclusion

For the reasons stated herein, the branches of defendants' motion seeking dismissal of: (1) plaintiff's Title VII claims pursuant to Rule 12(b)(6) for failure to timely exhaust administrative

---

[12]  In the event plaintiff's Title VII claim against XSPORT and state law claims are reinstated, plaintiff may renew his request for leave to amend upon a showing that the failure to exhaust his administrative remedies under the ADA and the statute of limitations applicable to any EPA claim should be equitably tolled or that defendants should be equitably estopped from asserting those defenses.

remedies and to state a claim for relief; and (2) plaintiff's NYSHRL claims pursuant to 28 U.S.C. § 1367(c)(3), are granted and the complaint is dismissed in its entirety with prejudice, unless within fourteen (14) days from the date of this order, plaintiff files an affidavit in accordance with this order. Plaintiff's motion for leave to amend the complaint is denied. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this case once thirty (30) days have elapsed from the date of this order, unless otherwise directed by the Court, and to serve notice of entry of this Order in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, see Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 28, 2010
     Central Islip, N.Y.